UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

Anthony Lemont Williams,
   Plaintiff,

   v.             07-3186

Jacksonville Health Care Administration
and Lt. Stephen R. Doolin,
   Defendants.

## Memorandum Opinion and Order

Before the court are Becky Sudbrink, who entered an appearance of behalf of Jacksonville Health Care Administration, and Stephen Doolin's unopposed summary judgment motion [26].

### Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

"Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events. *Johnson v. Cambridge Indus.*, Inc., 325 F.3d 892, 901 (7th Cir. 2000). A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(e). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed. R. Civ. P. 56(e). Further, "[t]he plaintiff cannot merely allege the existence of a factual dispute to defeat summary judgment …. Instead, he must supply evidence sufficient to allow a jury to render a verdict in his favor." *Basith v. Cook County*, 241 F.3d 919, 926 (7th Cir. 2001). Specifically, the non-moving party "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Filipovic v. K&R Express Systems, Inc*., 176 F.3d 390, 390 (7th Cir. 1999). Failure by the non-movant to meet all of the above requirements subjects him to summary judgment on his claims.

Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that would be admissible in evidence." Fed. R. Civ. P. 56(e) (emphasis added). Personal knowledge may include inferences and opinions drawn from those facts. *Visser v. Packer Eng. Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991). "But the inferences and opinions must be grounded in observation or other first-hand personal experience. They must not be based on flights of fancy, speculations, hunches, intuitions or rumors remote from that experience." *Visser*, 924 F.2d at 659. It is also well settled that "conclusory allegations and self-serving affidavits, if not supported by the record, will not preclude summary judgment. Keri v. Barod of Trustees of Purdue University, 458 F.3d 620, 628 (7th Cir.2006)(*citing Haywood v. N. Am. Van Lines, Inc.,* 121 F.3d 1066, 1071 (7th Cir.1997)).

Background

On June 7, 2007, Plaintiff, Anthony Williams, at that time an inmate within the Illinois Department of Corrections (IDOC), and incarcerated at Jacksonville Correctional Center (Jacksonville) filed the instant Complaint pursuant to 42 U.S.C. §1983 against Defendants Doolin and Sudbrink, a Lieutenant with Internal Affairs and the Health Care Unit Administrator, respectively. Specifically, Plaintiff alleged that following a fight in which he bit another inmate, he was written an inmate disciplinary report (IDR) for violation of state laws and violent assault. Complaint at 7. Plaintiff alleges that he was discriminated against by internal affairs because they contacted medical staff and found out Plaintiff was HIV positive prior to writing him the IDR. Complaint at 7. Plaintiff also alleged Health Care violated his "human rights" by disclosing to internal affairs that he was HIV positive without his consent. Complaint at 7-8. The Court found Plaintiff had "possibly stated a claim in that he might have a constitutional right to avoid disclosure of his HIV positive status." August 21, 2007, case management order. Defendants now move for summary judgment.

Undisputed Material Facts

1. Plaintiff was involved in a fight on March 8, 2007, in which he bit another inmate. (Complaint at 6).

2. Defendant Doolin, an Lieutenant with Internal Affairs at Jacksonville, was required by the warden to investigate the fight involving Plaintiff. Exhibit A, affidavit of Stephen Doolin, ¶4.

3. During the course of his investigation into the fight, Defendant Doolin interviewed Plaintiff, who admitted to biting an inmate on the chest during the fight. Exhibit A, affidavit of Stephen Doolin, ¶4.

4. As part of his duties as an Internal Affairs Lieutenant at Jacksonville, Defendant Doolin is required to contact Health Care if there is a fight that involves the potential exchange of bodily fluids to both notify them of the exchange and to find out if there is potential exchange of a communicable disease that could violate IDOC rules or state or federal law. Exhibit A, affidavit of Stephen Doolin, ¶5.

5. Defendant Doolin signs a form that authorizes him to access medical information from Health Care Staff at Jacksonville but requires that he not disclose the information beyond that which is necessary to carry out his official duties. Exhibit A, affidavit of Stephen Doolin, ¶5.

6. As part of the process for deciding what charges would be filed against the inmates involved in the March 8, 2007, fight, Defendant Doolin contacted Defendant Sudbrink, the Health Care Unit Administrator, who informed Defendant Doolin that Plaintiff was HIV positive and was aware he was HIV positive at the time he bit the other inmate. Exhibit A, affidavit of Stephen Doolin, ¶6.

7. Following his investigation, Defendant Doolin decided the appropriate offenses with which to charge Plaintiff were violent assault of any person, fighting, and violating state or federal law regarding criminal transmission of HIV. Exhibit A, affidavit of Stephen Doolin, ¶7.

8. Before writing Plaintiff an IDR and out of concern for potential medical confidentiality issues, Defendant Doolin requested assistance regarding whether it was okay to cite the statute for Criminal Transmission of HIV. Exhibit A, affidavit of Stephen Doolin, ¶8.

9. Defendant Doolin was directed to Rachel McKinzie, the Assistant Deputy Chief Legal Counsel for IDOC, who advised Defendant Doolin that it was okay to cite the statute for Criminal Transmission of HIV in writing Plaintiff an IDR. Exhibit A, affidavit of Stephen Doolin, ¶8 & Exhibit A attached thereto.

10. After receiving Ms. McKinzie's legal advice, Defendant Doolin wrote Plaintiff an IDR for violent assault of any person, fighting, and violating state or federal law, indicating in the body of the report that the charge for "Violating State or Federal Laws, as supported by 720 ILCS 5/12-16.2 Criminal Transmission of HIV" was substantiated. Exhibit A, affidavit of Stephen Doolin, ¶9 & Exhibit B attached thereto.

11. Defendant Doolin did not disclose Plaintiff's HIV positive status to any inmates. Exhibit A, affidavit of Stephen Doolin, ¶10.

12. Defendant Doolin only disclosed Plaintiff's HIV positive status those necessary to the investigative and disciplinary processes, and did not disclose it to any inmates. Exhibit A, affidavit of Stephen Doolin, ¶10.

Discussion and Conclusion of Law

The Defendants are entitled to qualified immunity because plaintiff has no clearly established right to confidentiality in his medical records. Through qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). *In Saucier v. Katz*, 533 U.S. 194, 200 (2001), the United States Supreme Court mandated a two-step sequence for resolving government officials' qualified immunity claims. First, a court must decide whether the facts that a plaintiff has alleged (See Fed. R. Civ. P

12(b)(6), (c)) or shown (See Fed. R. Civ. P. 56, 60) make out a violation of a constitutional right. *Pearson v. Callahan*, 129 S. Ct. 808, 815-16 (2009), *citing Saucier*, 533 U.S. at 201. "Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson*, 129 S. Ct. At 816. Qualified immunity applies unless the official's conduct violated a clearly established constitutional right. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Clearly established rights must be proven through closely analogous cases. *McGrath v. Gillis*, 44 F.3d 567, 570 (1995).

In *Anderson v. Romero*, 72 F.3d 518, 523 (7th Cir. 1995), the Seventh Circuit declined to recognize a freestanding constitutional right of prisoners to confidentiality in their medical records. In *Anderson*, an HIV positive inmate brought suit pursuant to 42 U.S.C. §1983 and the Illinois AIDS Confidentiality Act (410 ILCS 305/1 through 16), alleging that the superintendent of his housing unit told a guard in the presence of another guard to make sure the plaintiff was single-celled because of his HIV. *Anderson*, 72 F.3d at 520. According to the plaintiff, word spread about his HIV positivity and the plaintiff was subject to various harassment and taunting and denied yard privileges and haircuts. *Anderson*, 72 F.3d at 520. Plaintiff alleged that by revealing he was HIV positive, the defendants had deprived him of equal protection, liberty without due process by preventing him from exercising and having his hair cut, and subjected him to cruel and unusual punishment. *Anderson*, 72 F.3d at 520. The Court granted the defendants qualified immunity, stating "[w]e cannot find any appellate holding that prisoners have a constitutional right to the confidentiality of their medical records" and "[t]his is not a holding that inmates have such a right." *Anderson*, 72 F.3d at 527. Since *Anderson*, the Seventh Circuit has not considered this issue again. *See Franklin v. McCaughtry*, 110 Fed. Appx 715, 719 (7 Cir. 2004) (prisoners th have at most a very limited privacy rights "and we have not previously held in a published opinion that they enjoy a constitutional right to privacy in their medical information"); *Massey v. Helman*, 196 F.3d 727, 742 (7th Cir. 1999) (*citing Anderson* for fact that "whether prisoners have any privacy rights in their prison medical records and treatment appears to be an open question"). The existence of a freestanding constitutional right of prisoners to confidentiality in their medical records is not clearly established, as the Seventh Circuit has not definitively spoken on the issue—although it passed on a clear opportunity to recognize the right. Therefore Defendants are entitled to qualified immunity. *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (qualified immunity applies unless the official's conduct violated a clearly established right, apparent from the pre-existing law).

Furthermore, if the plaintiff is claiming violations of HIPAA, the court agrees with other courts that have addressed the question that there is no private right of action for a violation of HIPAA. *See Doe v. Bd. Trustees Univ. Ill.*, 429 F.Supp.2d 930, 944 (N.D.Ill.2006) ("Every court to have considered the issue, ... has concluded that HIPAA does not authorize a private right of action"; citing cases)(*cited by Martin v. Dupont Hosp.*, 2010 WL 2346285 (N.D. Ind. 2010) (unpublished); *Butler v. IDOT*, 533 F.Supp.2d 821 (N.D. Ill. 2008)("HIPAA does not imply a private right of action). Since no basis for federal jurisdiction exists, the court does not address whether the plaintiff makes out any state law claims.

1. Pursuant to Fed. R. Civ. P. Rule 56, Defendants' unopposed motion for summary judgment [26] is allowed. The Clerk of the court is directed to enter judgment in favor of the defendants, and against the plaintiff pursuant to Fed. R. Civ. P. 56. This case is closed in its entirety. The parties are to bear their own costs.

2. If the plaintiff wishes to appeal this dismissal, he must file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal. Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate another strike under 28 U.S.C. 1915(g).

Enter this 30th day of September 2010

/s/ Harold A. Baker
_____
Harold A. Baker
United States District Court